CLAUDE W. MOODY, Respondent, v. SANFORD J. WISE and CHARLES M. KOHN, Appellants.

First Department, May 29, 1919.

Bills and notes — indorsement — oral agreement to indemnify indorser — agreement to set aside proceeds of property sold — waiver of strict compliance — notice of protest — failure to show· due protest to charge indorser.

In an action by an indorser to recover on an agreement to indemnify him it appeared that plaintiff, the sales agent of a foreign corporation, induced it to organize a subsidiary company in this State to facilitate the sale of trucks; that plaintiff and the defendants W. and K. became the sole owners, each holding one-third of the capital stock of the subsidiary company; that the defendant K. became its vice-president and sales manager and endeavored to negotiate a sale to one who had been his customer when he had been the sales manager of another company, and said customer manifested a desire to purchase if eight second-hand trucks were taken in part payment; that the subsidiary company, being short of funds, through K., endeavored to obtain credit from the parent company for part of the purchase price, and said company agreed to accept six notes of the subsidiary company if plaintiff and the defendants indorsed them; that defendant W., who was president of the latter company, refused to indorse, whereupon plaintiff, at the request of the defendants, indorsed the notes, and after the original agreement to indemnify him, both defendants agreed to set aside the proceeds of the sale of the second-hand trucks to the amount of the notes. Two of the notes which first fell due were paid. Plaintiff testified that he received notices of protest for non-payment of the other notes, but it did not appear whether the notices of protest were sent in time. Defendants sold their stock to another and resigned as officers of the corporation before any of the notes became due. Before this four of the second-hand trucks had been sold.

Held, that on the court's charge the jury were at liberty to hold the defendants liable either on the theory of a parole agreement to indemnify or on a breach of the agreement to set aside the proceeds of the sales to the extent of the notes;

That unless the general verdict can be sustained on both theories the judgment should be reversed;

That such situation might have been obviated by a special finding;

That if the verdict was rendered on the first theory it was against the weight of the evidence;

That the judgment in favor of the plaintiff must be reversed and a new trial granted;

That if defendants agreed to indemnify plaintiff he should have shown that the notes were duly protested so that he became liable as indorser, before he was at liberty to pay them and ask for reimbursement;

That whether the proceeds of the sales of the trucks were deposited as testified to by the defendants, there was no compliance with the agreement, and in such case plaintiff might perhaps pred cate liability of the defendants on breach of that agreement, unless plaintiff was aware of the facts and waived compliance.

APPEAL by the defendants, Sanford J. Wise and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 18th day of November, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of November, 1918, denying defendants' motion for a new trial made upon the minutes.

*Edward A. Alexander*, for the appellants.

*Allan A. Deutsch* of counsel [*Henry Margoshes* with him on the brief], for the respondent.

LAUGHLIN, J.:

This is an action on an agreement alleged in the amended complaint to have been made by the defendants with the plaintiff on the 1st day of September, 1916, whereby the defendants agreed that if the plaintiff would indorse certain notes of the Gramm Company, Inc., which for brevity will be referred to as the Gramm Company, payable to the Gramm-Bernstein Company of Lima, Ohio, which will be referred to as the Bernstein Company, they would save him harmless therefrom, and would set aside certain funds to be received by the Gramm Company and turn the same over to the plaintiff in the event that he should be compelled to pay the notes or any part of them. The Bernstein Company was a corporation organized under the laws of Ohio, and was engaged in the manufacture of motor trucks. The plaintiff was its sales agent for the eastern half of the United States. The evidence tends to show that at the instance of the Bernstein Company the plaintiff was instrumental in having the Gramm Company incorporated under the laws of this State for the purpose of becoming the representative of the parent company in selling its trucks in the metropolitan district and in some additional territory, and he and the defendants became the sole stockholders of the Gramm Com-

pany, each holding one-third of the capital stock. The Gramm Company thereupon made a contract with the parent company for the purchase and sale of its trucks. The defendant Kohn became the vice-president and sales manager of the Gramm Company and all sales made by it were made by him personally and under his direction. One McCullough had been his customer when he had been a sales manager for another company. Kohn endeavored to negotiate a sale of six Gramm-Bernstein trucks to McCullough, and McCullough manifested a desire to purchase, provided the Gramm Company would accept eight second-hand trucks in part payment for the new ones, instead of requiring him to pay in full therefor in cash. The Gramm Company, being somewhat short of funds, through Kohn, endeavored to obtain credit from the Bernstein Company for part of the purchase price of the new trucks which it was thus to sell to McCullough, with the result, according to the testimony of Kohn, that the Bernstein Company agreed to take six notes of the Gramm Company for $750 each, aggregating $4,500, in part payment, provided the plaintiff and the defendants indorsed them. Kohn further testified in substance that the defendant Wise refused to indorse the notes, and that he then presented the matter to the plaintiff who agreed to indorse them and to endeavor to arrange to have the Bernstein Company waive the requirement that Wise indorse, and that thereafter the notes came from the Bernstein Company for execution by the Gramm Company and by the indorsers, and were executed by the Gramm Company by Heffernan, its secretary, who was also the confidential secretary of the plaintiff; that the plaintiff was treasurer of the Gramm Company but that the notes were signed by Heffernan by authority of the board of directors. The plaintiff testified that Kohn informed him that the Bernstein Company required two indorsers, and that the defendant Wise refused to indorse; that both defendants asked him to become one of the indorsers on the notes and that he replied that it was no advantage to him, and that he would not do so unless they guaranteed him against loss and agreed to indemnify him, and that they both so agreed; that relying on their agreement he subsequently indorsed the notes, all of which bear date the 17th of October, 1916, and

were payable in from one to seven months after date respectively; that Wise was president and that Kohn was vice-president of the Gramm Company; that after the original agreement for the indorsement of the notes was made, but before they were made, both defendants agreed with him that in addition to the former agreement to indemnify him they would see that when the used trucks taken from McCullough were sold, the proceeds of the sales would be set aside to pay the notes; and that on the 17th of October, 1916, he wrote to Wise referring to the notes which he was to indorse, asking that a letter be addressed to him, signed by both defendants, in which they would individually agree to set aside the funds received from the sale of the second-hand trucks equal to the amount of the notes, and that they in effect guarantee that the trucks would not be disposed of and the money used for other purposes, and to that he received from them, under date of October nineteenth, a letter signed by the defendants as follows:

" DEAR SIR.— It is understood and agreed by both Mr. Kohn and myself, as per our signatures below, that we will set aside the funds received from the sale of any of the second-hand trucks which we are to receive, or have received, from Mr. William McCullough, in trade for his new trucks which may be sold by us, to the amount of the total of the notes which are to be given to the factory, and which amount I believe to be $4,500.00.

" S. J. WISE,
" C. M. KOHN."

That the two notes which first fell due were paid but that none of the others was paid, and that he received notice of protest for the non-payment thereof, and thereafter paid them without litigation and demanded reimbursement from the defendants. The plaintiff offered the notices of protests received by him in evidence, and he testified that he received them immediately after the due dates. When the notices of protests were offered in evidence the attorney for the defendants asked the court to see if they were sent in time. An adjournment was taken without any ruling on the offer. On the cross-examination of the plaintiff he said that he received the notices of protests shortly after they fell due;

that he knew they were received immediately after protest because he had received.advice to that effect from his secretary who had received them during his absence from the city, but that he could not swear that they were mailed the day they were dated or when they were mailed. At this point the court ruled in effect that it was immaterial when they were mailed as the *plaintiff only* could take advantage of the failure to duly protest the notes and that it was immaterial whether or not they were protested in time. The attorney for the defendants insisted that on the oral agreement to indemnify the plaintiff the defendants would not be liable unless the notes were duly protested to render the plaintiff legally liable on his indorsement, but the court adhered to the ruling that the evidence as to whether the notes were duly protested was immaterial. The notices of protests were not introduced in evidence, but it appears that one of them was stamped as having been received by the plaintiff seven days after the note to which it related became due, and with respect to that the plaintiff testified that it might not have been stamped the day it was received; but there is no other evidence with respect to when it was received. The defendants sold their stock to one Taylor in the month of January before any of the notes in question became due and resigned as officers and directors of the company. Before this, however, four of the second-hand trucks had been sold for $5,500. The plaintiff testified that Wise told him that this money would be held out for the payment of the notes if he, Wise, did not take them up before they became due, and that Kohn told him that this money had been turned over to the treasurer, Wise, and he further testified that Wise was treasurer. Wise denied that he so agreed to indemnify the plaintiff or that he was the treasurer of the company; and he testified that the proceeds to the extent of $4,500 obtained from the sale of the second-hand trucks was deposited in a special account in the Greenwich Bank in the name of the Gramm Company, to cover the agreement made by the defendants with the plaintiff and that this was done by his direction; that the plaintiff was the treasurer of the Gramm Company, and personally knew all about the sale of the second-hand trucks and the disposition of the proceeds, and that down to

the time the defendants sold their stock in the Gramm Company, that company was solvent and had net assets of the value of $30,000 and that the defendants each received $5,000 in cash for their respective shares of stock, and in addition thereto each received a note for $7,500. Kohn also testified that the plaintiff was the treasurer of the company, and that the proceeds of the sale of the second-hand trucks received from McCullough were deposited in the general bank account of the company with the Farmers' Loan and Trust Company, as the sales were made, and that this all occurred prior to January 1, 1917, and that at all times until the defendants sold their stock the bank account of the company remained good for the amount of the notes and that Taylor, who purchased the stock, was told that $4,500 in the bank was set aside to meet these notes; but that no part of it was specially set aside for the payment of the notes and that the reason that this was not done, and that the notes were not taken up in advance, was that they were trying to build up a credit for the company at the bank; and that the plaintiff was familiar with all these facts and personally knew how the money was deposited and never objected thereto. Kohn also denied the making of the verbal agreement.

Neither the minutes of the Gramm Company nor the records of either of the banks was produced to settle the controversy arising on the evidence as to who was the treasurer of the company, and as to where and how the proceeds of the sales of the second-hand trucks were deposited.

On the charge of the court the jury were at liberty to hold the defendants liable either on the theory of the parole agreement to indemnify and to save the plaintiff harmless or on the theory that the defendants did not perform their special agreement in writing to set aside the proceeds of the sales of the second-hand trucks to the extent of the notes. The jury rendered a general verdict, and the record does not, therefore, disclose upon which theory the verdict was predicated. Therefore, unless it can be sustained on both theories the judgment must be reversed. This might have been obviated by a special finding. We are of the opinion that if the verdict was rendered on the first theory it is clearly against the weight of the evidence. The plaintiff claims that when asked to

indorse the notes, he informed the defendants in substance that he had no interest in the matter; but that is not reasonable, for he had an equal interest with defendants on account of his equal stock ownership in the Gramm Company, and he had a further interest to the extent of $900 which he received on account of the sale of the six trucks under his general agreement with the Bernstein Company in which the defendants did not participate. In the circumstances, therefore, it is not probable that the defendants would agree to indemnify him against his indorsement on the notes or that he would require such an agreement. If, as the plaintiff concedes, and as is shown by the uncontroverted testimony, the defendant Wise was unwilling to indorse the notes it is improbable that he would be willing to agree to save the plaintiff harmless for by such an agreement he would incur a greater liability than by indorsing. Moreover, if the parole agreement had been made by the defendants it is highly probable that plaintiff would have requested that it be incorporated in the written agreement which he subsequently asked them to execute and which they did execute. On this branch of the case the only reasonable inference, we think, is that the plaintiff insisted that the proceeds of the sales of the second-hand trucks, to the extent necessary, should be set apart and held to meet these notes for that is all he asked the defendants to embody in the written agreement with him. He doubtless exacted that for the reason that they were more directly in charge of the Gramm Company than was he. We are also of the opinion that if the defendants did agree to indemnify him it was incumbent upon him to show that the notes had been duly protested so that he became liable as an indorser, before he was at liberty to pay them and look to the defendants for reimbursement. On that point it is doubtful whether the evidence is sufficient. Whether the proceeds of the two trucks were deposited as claimed by the defendant Kohn or as claimed by the defendant Wise it was not a compliance with the written agreement, and unless, as claimed by the defendants, the plaintiff was aware of the facts with respect to how it was deposited and waived a strict compliance with the agreement, liability of the defendants might be predicated upon that ground on proof that the failure to set the money apart as they agreed resulted in the

loss thereof for the purpose of meeting the notes or reimbursing the plaintiff. But with respect to these matters the facts will doubtless be developed on a new trial.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.